# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-01909-SCT

*DEWAYNE K. JONES*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/2003 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN RICHARD MAY, JR |
| | RHONDA C. COOPER |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | DAVID CLARK |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/20/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE COBB, P.J., EASLEY AND CARLSON, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Dewayne K. Jones appeals from his conviction in the Rankin County Circuit Court for transferring cocaine in violation of Miss. Code Ann. § 41-29-139 (Supp. 2004).   Following a jury trial, Jones was sentenced to 30 years' imprisonment (last 10 years suspended) and five years' probation upon release.   Jones raises two issues on appeal: (1)  that the trial court erred by allowing the State to amend the indictment against Jones on the morning of trial by replacing the words "confidential informant" with the name of "Grady

Shoemaker" and (2) the trial court erred by denying Jones a fundamentally fair trial as guaranteed by the United States and Mississippi Constitutions.

¶2.     We conclude that the trial court did not err, and we affirm Jones's conviction and sentence.

**FACTS**

¶3.     On June 27, 2002, Rankin County Sheriff's deputies Bryan Bailey and Chad Dixon were conducting surveillance on Grady Shoemaker, whom they suspected of being a drug dealer. Bailey and Dixon had set up a drug transaction between Shoemaker and a confidential informant later identified only as "Bill LNU"[1] in order to arrest Shoemaker. Bailey and Dixon provided the confidential informant (CI) with money to buy the cocaine, but when the CI went to Shoemaker's residence to make the transaction, Shoemaker told the CI that he did not have any cocaine at that time and would have to go to a house in Flowood to obtain a supply. Shoemaker and the CI, along with Shoemaker's cousin Justin Fitzhugh, then traveled to the Lake Harbor Trade Depot. Shoemaker drove one car, while Fitzhugh and the CI followed in a separate car. At the Trade Depot, Shoemaker obtained $580 from the CI to buy cocaine from Shoemaker's supplier, and the three then traveled to a Wal-Mart parking lot, where Shoemaker told the CI to wait and that he would return with the cocaine.

¶4.     Deputy Bailey, having prior information that Shoemaker's supplier lived in a house near the Wal-Mart, ordered a surveillance team to watch that house in the event that Shoemaker

---

[1]"LNU" is an abbreviation for "last name unknown." The true names of confidential informants are not revealed, in order to protect their safety and to make it possible for them to continue working undercover until such time as they must be revealed to complete prosecution of the cases involving them.

went there to obtain cocaine. Shoemaker drove to the house being watched, where he met with Dewayne Jones in the garage area for a few minutes[2] and then left to return to Wal-Mart. At the Wal-Mart, Shoemaker gave the cocaine to the CI and was then arrested.

¶5.     When the law enforcement officers arrested Shoemaker, deputy Bailey ordered other officers to secure the house where Shoemaker met Jones until the sheriff's department obtained a search warrant for the premises.   As the officers approached the house, they saw Jones run, and after a brief chase, apprehended him.   Once the officers advised Jones of his *Miranda* rights, they questioned him and, according to the officers, Jones admitted selling cocaine to Shoemaker.   Later, at the close of Jones's trial, the State summarized the events of the cocaine transaction between Shoemaker, Jones, and the CI  as getting "two for the price of one" and stated that the Rankin County Sheriff's Department "got lucky."

¶6.     On the day of Jones's trial, after the jury had been selected but not yet empaneled, the State moved to amend the indictment against Jones.   The original indictment alleged Jones "willfully, unlawfully, feloniously, knowingly, and intentionally transfer[ed] a quantity of [c]ocaine . . . to **a confidential informant**, in violation of Miss. Code Ann. Section 41-29-139 [3], against the peace and dignity of the State of Mississippi." (emphasis added).   The State moved to replace "confidential informant" with "Grady Shoemaker."   Shoemaker was then a co-defendant scheduled to be tried separately after Jones's trial.   Jones objected, stating that the only CI identified to the defense as "credible and reliable" and given a confidential informant number was Bill LNU and that Jones accordingly prepared his defense based upon

---

[2]Based upon the surveillance tape of Jones's house, Shoemaker was in Jones's house for approximately seven minutes.

3

the original indictment charging him with transferring cocaine to the identified confidential informant. The trial court allowed the amendment, and Jones then moved to dismiss, or alternatively for a mistrial. Jones argued that since he had prepared his defense upon the original indictment of transferring cocaine to a "confidential informant," the amendment to change "confidential informant" to "Grady Shoemaker" was "solely prejudicial and a miscarriage of justice." The trial court denied Jones's motion, and the trial proceeded.

¶7. During the trial, deputies Dixon and Bailey testified for the State regarding the logistics and events of the staged transaction. In addition, Chris Wise of the Mississippi Crime Laboratory testified for the State and identified the substance Shoemaker transferred to the confidential informant as cocaine. Finally, Shoemaker testified for the State identifying Jones as the person from whom he obtained the cocaine and stating that he was not promised anything by the State in exchange for testimony. Jones called no witnesses as part of his defense.

## ANALYSIS

### I. Amendment of the indictment

¶8. It is a well-settled principle that the Supreme Court is the "ultimate expositor of the law of this state." *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So.2d 746, 754 (Miss. 1987). Therefore, this Court conducts a de novo review on questions of law. *Id.* The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court. *Peterson v. State*, 671 So.2d 647, 652 (Miss. 1996).

¶9. Jones argues that the trial court committed reversible error by amending the indictment to accuse Jones of transferring cocaine to "Grady Shoemaker" instead of a "confidential

4

informant" as originally alleged in the indictment. According to Jones, the amendment was one of substance, not of form. It is fundamental law that courts may amend indictments only to correct defects of form and that defects of substance must be corrected by the grand jury. *Rhymes v. State* 638 So.2d 1270, 1275 (Miss. 1994). An amendment is one of form if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. *Pool v. State*, 764 So.2d 440, 443 (Miss. 2000). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." *Id.*

¶10. The rule set out in *Griffin v. State*, 584 So. 2d 1274, 1275-76 (Miss. 1991), is that the State can only amend the indictment if the amendment does not change the facts which are the essence of the offense, or materially alter a defense of the defendant so that it results in prejudice to the case. The identity of the person to whom the drugs were sold does not change the essence of the offense, since such identity is not an element of the offense.

¶11. Jones argues that prior to the amendment of the indictment he had a defense of mistaken identification to the charge against him. According to Jones, he prepared his defense based upon the original indictment and was prepared to prove that he did not transfer cocaine or any other controlled substance to the confidential informant mentioned in the indictment and later identified as Bill LNU. Moreover, Jones claims that prior to the amendment he was prepared to attack the chain of custody in the transfer of the cocaine by demonstrating that he could not possibly have transferred any controlled substance to Bill LNU since the two never met. Thus, Jones argues, after the amendment to the indictment, these defenses were no longer available to him.

5

¶12. Jones cites *Parchman v. State*, 279 So.2d 602 (Miss. 1973), in support of his assertion that the amendment was one of substance. In *Parchman*, the defendant was convicted of shooting a man named Grady after an argument in a pickup truck while riding home from picking cotton. Also wounded in the shooting was Grady's brother, Harmon. The indictment alleged that Parchman shot Harmon, but before Parchman went to trial, the State moved to amend the indictment by changing the name of the *victim* from "Harmon" to "Grady." Both the prosecutor and Harmon testified that while Harmon appeared before the grand jury, the grand jury had intended to indict Parchman for shooting Grady, not Harmon, and that the placing of Harmon's name on the indictment was a mistake. The trial court allowed the amendment, and on appeal Parchman argued that the amendment was substantive.

¶13. Responding to Parchman's argument that the changing of the names in the indictment was substantive, this Court said:

> With respect to amendments which seek to change the name or description of a person to which the indictment refers, it has been held that changes which conform the indictment so as to correctly name the person intended by the grand jury are allowable. However, if the amendment results in changing the identity of the person, so as to name a person other than the one intended by the grand jury, it is a substantive change and is not allowable.

*Id.* at 603. The Court then determined that the grand jury intended to indict Parchman for shooting Grady and that the placing of Harmon's name on the indictment was a mistake. The Court further held that even if the grand jury had not intended to indict Parchman for shooting Grady, Parchman was not prejudiced since a defense available against shooting Harmon was equally available against shooting Grady. *Id.* at 604. Accordingly, this Court found the

6

amendment was one of form and affirmed Parchman's conviction. Jones's reliance on *Parchman* is misplaced.

¶14.    The Mississippi Court of Appeals dealt with a more similar situation in *Mitchell v. State,* 739 So. 2d 402, 404 (Miss. Ct. App. 1999), when it found no error in  allowing the State to amend the indictment to reflect the true purchaser of the drugs.  The unanimous Court of Appeals held that the amendment was to form rather than substance, as there "was sufficient notice to the defendant of the crucial elements of this offense to be proven, that he sold and delivered to another person a controlled substance." *Id.* The identity of the purchaser of the drugs was not an element of the crime.  Here, Jones attempts to distinguish that case by pointing out that the CI and Shoemaker were not together when the drug sale occurred, while in *Mitchell,* the real purchaser and the incorrectly listed purchaser were together when the sale occurred.  *Id.* at 403-04.  This fact does not require a different result in the present case. While Jones and the CI  were not together here, there was more than enough evidence that made it clear why Jones was arrested and charged.

¶15.    Jones also argues that the lateness of the amendment to indictment prejudiced him since he relied on the original indictment to prepare his defense.  However,  Jones knew of the role of Grady Shoemaker in the alleged cocaine transaction which took place at the time of Shoemaker's and Jones's arrest and the importance of Shoemaker's potential testimony to the case.    Therefore, Jones could not have been "surprised" by the State's attempt to prove Jones transferred cocaine to Shoemaker.

¶16.    The two defenses which Jones claims he no longer had after the amendment, would not have changed the outcome of the case, nor even had a substantial effect on it. Jones does not

7

demonstrate how he was prejudiced. Assertions of error without prejudice do not trigger reversal. *Nicholson ex rel. Gollott v. State*, 672 So. 2d 744, 751 (Miss. 1996). Since Jones knew of the circumstances of his arrest and the possibility of the State's needing to prove Jones transferred cocaine to Shoemaker, we hold that trial court did not err in allowing the trial to proceed with the amended indictment. Consequently, Jones's first assertion of error is without merit.

## II. Denial of fundamentally fair trial

¶17. Jones argues that the trial court denied him a fundamentally fair trial under the United States and Mississippi Constitutions by allowing the amendment on the morning of trial and after the jury had been selected. According to Jones, the State not only was obligated to inform him earlier of the indictment's defect, but also it concealed the identity of its material witness, Grady Shoemaker, until the morning of trial. In support of his argument, Jones does not cite any applicable sections of the United States and Mississippi Constitutions or corresponding case law.

¶18. Generally, a defendant can be denied a fundamentally fair trial when the aggregate effect of various harmless errors creates such an atmosphere of bias, passion, and prejudice that reversal is required. *Manning v. State*, 884 So.2d 717, 730 (Miss. 2004). While Jones does not offer applicable support for his assertion that he was denied a constitutional right to a fundamentally fair trial, Jones does cite *Hentz v. State*, 489 So.2d 1386 (Miss. 1986), and *Norris v. State*, 735 So.2d 363 (Miss. 1999), in support of his argument that his conviction must

be reversed due to the State's failure to disclose Shoemaker's role in the transaction. These cases deal with discovery violations and the State's refusal to disclose required evidence and information. Jones does not allege that the State refused to disclose Shoemaker as a potential witness. Instead, Jones asserts that the State misled the defense by concealing the identity of the State's "true" material witness. According to his argument, both of Jones's lost defenses relate to the fact that he could not have sold the cocaine to the CI. These defenses do not change the fact that he sold the drugs to someone in violation of Miss. Code Ann. § 41-29-139(a).

¶19.    While two of Jones's defenses were impaired, this did not prejudice his case. There are two reasons why. First, neither of the two "lost defenses" relate to any essential element of the offense. They are both related only to the change of names from "Bill LNU" to "Grady Shoemaker". Second, this Court has said that it is not necessary for the indictment to mention the purchaser of the drugs when the defendant is charged with the sale of drugs. *Young v. State*, 245 So. 2d 26, 27 (Miss. 1971); *Lea v. State*, 64 Miss. 201, So. 51(1887). Only if a substantive defense is impaired, sufficiently to prejudice a defendant's case, should such amendment to the indictment warrant reversal.

¶20.    In closing, the defense repackages the same facts and argument, by saying that the State committed prosecutorial misconduct by intentionally and/or negligently misleading the defense by concealing from Jones the identity of the true material witness of the State. That is not borne out by the record before us. Jones's second assertion of error is without merit.

## CONCLUSION

¶21.    Based upon the above analysis, this Court affirms the trial court's judgment.

9

¶22.    **CONVICTION OF TRANSFER OF COCAINE AND SENTENCE OF THIRTY (30) YEARS, WITH THE LAST TEN (10) YEARS SUSPENDED AND FIVE (5) YEARS ON SUPERVISED PROBATION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $5,000.00,  ALL COURT COST, FEES AND ASSESSMENTS, WITH CONDITIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON,  DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS, WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**