987 So.2d 1027 (2008)
William James LOGAN, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KP-01790-COA.
Court of Appeals of Mississippi.
April 1, 2008.
Rehearing Denied August 12, 2008.
*1028 William James Logan, Jr., pro se, appellant.
Office of the Attorney General by Deshun Terrell Martin, for appellee.
Before MYERS, P.J., IRVING and ISHEE, JJ.
IRVING, J., for The Court.
¶ 1. William James Logan Jr. was convicted of two counts of burglary by a Covington County jury and was sentenced, as a habitual offender, to serve concurrent terms of twenty-five years on each count in the custody of the Mississippi Department of Corrections. Aggrieved, Logan appeals and assigns the following issues for our review: (1) that the trial court erred in allowing the State to amend the indictment and that the indictment was impermissibly vague, (2) that the trial court erred in allowing certain evidence to be admitted at trial, (3) that he was denied the right to an attorney in violation of the Sixth Amendment and Article 3, Section 26 of the Mississippi Constitution, and (4) that he received ineffective assistance of counsel.[1]
¶ 2. We find no merit to Logan's assertions of error; therefore, we affirm his conviction and sentence.

FACTS
¶ 3. On the morning of January 5, 2004, Ruby and Earl Benson, after a trip to Mount Olive, Mississippi, returned to their home on Highway 35 in Collins, Mississippi.[2] The couple observed a vehicle parked in their driveway and witnessed Logan exit their home carrying a money box which belonged to Earl. Logan then got *1029 into his vehicle and left. Ruby went inside the house while Earl pursued Logan. In addition to the money box, a blue jewelry box, a necklace, Sacajawea golden dollar coins, and $2,300 in cash were missing from their home. The Covington County Sheriff's Department was notified.
¶ 4. After the Benson burglary was reported, Carol Sue Wise came home to find her front door open and the door's glass casing on the floor. Carol cautiously entered her house and immediately noticed that two of her piggy banks were missing. She then called 911 and reported that her home had been burglarized. Upon closer examination, Carol noticed that her jewelry box was also missing.
¶ 5. Deputies Wayne Harvey and Chris Newman went to investigate the Benson burglary. While en route to the Bensons' residence, dispatch alerted the deputies that a second home (Carol's residence) had been burglarized. Shortly after getting the call from dispatch, the deputies stopped a vehicle matching the description of the car which had been driven by the burglar fleeing the Bensons' residence. The driver, Logan, exited the vehicle; however, after he learned why he had been stopped, he got back into the vehicle and fled. The deputies gave chase, and Logan pulled over shortly thereafter.
¶ 6. Deputy Newman approached the vehicle and saw, in plain view, two piggy banks and gold coins. An inventory search of the vehicle was conducted, and deputies also recovered other items, including approximately $2,300 in cash.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Indictment
¶ 7. "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court." Jones v. State, 912 So.2d 973, 975(¶ 8) (Miss.2005) (citing Peterson v. State, 671 So.2d 647, 652 (Miss.1996)). Mississippi appellate courts employ a de novo standard of review for questions of law. Id. (citing UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc., 525 So.2d 746, 754 (Miss. 1987)).
¶ 8. Logan makes two arguments regarding his indictment. First, Logan contends that the trial court erred in allowing the State to amend the indictment.[3] The final amendment was made on July 13, 2006, eleven days before Logan went to trial. Logan argues that he was not given an "opportunity to agree or disagree [with] a critical decision [, the amendment of the indictment]." The indictment, as amended, reads in pertinent part:
THE GRAND JURORS for the State of Mississippi, taken from the body of good and lawful men and women of Covington County, Mississippi, elected, impaneled, sworn and charged to inquire in and for said County and State aforesaid, in the name and by the authority of the State of Mississippi, upon their oath presents that:
COUNT I: WILLIAM JAMES LOGAN, JR. in said County and State on or about the 5th day January, A.D., 2004, did then and there willfully, unlawfully, feloniously and burglariously break and enter the dwelling of Ruby Benson, said Williams [sic] James Logan, Jr., having the intent to steal therein, in violation of Section 97-17-23 of the Miss.Code of 1972, annotated, contrary to the form of the statute in such cases made and provided and against the *1030 peace and dignity of the State of Mississippi.
And the Grand Jurors do further present on their oaths as aforesaid that the said WILLIAM JAMES LOGAN, JR., as a part of a common scheme or plan, COUNT II: WILLIAM JAMES LOGAN, JR., in said County and State on or about the 5th day of January, A.D., 2004, did then and there willfully, unlawfully, feloniously and burglariously break and enter the dwelling of Sue Wise, said Williams James Logan, Jr., having the intent to steal therein, in violation of Section 97-17-23 of the Miss.Code of 1972, annotated, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi.
¶ 9. It is well established that "indictments may be amended as to form but not as to the substance of the offense charged." URCCC 7.09. Amendments as to form do not prejudice the defense. Jones, 912 So.2d at 976(¶ 9). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." Id. Moreover, "[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09.
¶ 10. Logan contends that his defense was prejudiced because, prior to the amendments, he could have shown that he was incarcerated on June 5, 2004, the date originally provided in the indictment as the date the homes were burglarized. According to Logan, his defense as it stood prior to the amendments was no longer available after the amendments were made. We recognize that the amendments precluded Logan from making that particular argument; however, we have scoured the record and cannot find where Logan ever attempted to assert an alibi defense.[4] Nevertheless, an alibi defense, though not asserted, remained available even after the last amendment.[5] In Baine v. State, 604 So.2d 258, 261 (Miss.1992), the Mississippi Supreme Court held that: "Unless time is an essential element or factor in the crime,... an amendment to change the date on which the offense occurred is one of form only." Furthermore, Rule 7.06(5) provides that "[f]ailure to state the correct date shall not render the indictment insufficient." (Emphasis added). Thus, we are not persuaded by Logan's argument that the changes constituted "critical decisions." Logan suffered no prejudice as a result of the amendments because they were merely amendments as to form.
¶ 11. Logan also argues that his initial court-appointed counsel did not inform him that the indictment had been amended twice and that this lack of knowledge *1031 deprived him of due process because he did not have an opportunity to oppose the amendments. We find nothing in the record that disputes Logan's accusation. Therefore, we accept that Logan was deprived of an opportunity to oppose the amendments. This fact notwithstanding, we find no prejudice to Logan because, even if he had been given prior knowledge of the State's intention to seek amendments to the indictment, there was nothing he could have done to prevent the court from granting the amendments. As we have already noted, these amendments were amendments of form and not amendments of substance. There is no merit to this issue.
¶ 12. Second, Logan argues that the indictment is impermissibly vague because it fails to provide the addresses of the houses where the burglaries occurred and because it fails to specify the property that was stolen. Logan contends that the failure to provide the addresses of the residences "makes it impossible to know what he is expected to defend." The Mississippi Supreme Court has held that an "indictment [is] legally sufficient if it gives the accused fair notice of [the] offense with which he is charged." McCollum v. State, 785 So.2d 279, 283(¶ 12) (Miss.2001) (quoting Holloman v. State, 656 So.2d 1134, 1139 (Miss.1995)). Our review of the indictment convinces us that Logan was sufficiently informed that he was being indicted for burglarizing the homes of Ruby Benson and Carol Wise, even though the addresses of their homes were not provided. Rule 7.06 of the Uniform Rules of Circuit and County Court Practice mandates that "[t]he indictment . . . be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." We conclude that the indictment sufficiently complied with Rule 7.06, as it provided the essential facts constituting the two counts of burglary which Logan was charged with committing. This issue lacks merit.

2. Admission of Evidence
¶ 13. The trial judge, over objection by the defense, allowed into evidence several items that were seized during the investigation. This Court uses an abuse of discretion standard when determining whether the trial judge erred in admitting or excluding evidence. Clark v. State, 891 So.2d 136, 139(¶ 11) (Miss.2004) (citing Herring v. Poirrier, 797 So.2d 797, 804(¶ 18) (Miss.2000)). "The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then, the ruling of the lower court must be affirmed." Id.
¶ 14. Logan contends that the deputies illegally searched his vehicle while it was impounded because they did so without securing a valid search warrant. As previously stated, the piggy banks and gold coins were in plain view when Deputy Newman approached Logan's vehicle, and the $2,300 was seized following an inventory search which was conducted pursuant to routine police procedure. In Black v. State, 418 So.2d 819, 821 (Miss.1982), the Mississippi Supreme Court held that "it is permissible for officers to conduct an inventory search of [a] vehicle when the circumstances require it to be impounded.. . ." We find that the circumstances required that Logan's vehicle be impounded, as he was alone in the vehicle when it was stopped. Thus, we find no error in the trial court's decision to admit the piggy banks and gold coins. Likewise, we find no error in the trial court's decision to *1032 allow testimony regarding the $2,300. This issue lacks merit.
¶ 15. Logan also takes issue with when the inventory search occurred, arguing that "the time of the inventory [search] was a hotly disputed topic, because it shows that there was no safe keeping of [the] property. . . ." Deputy Newman testified that the vehicle was searched on the day that Logan was arrested; however, the inventory report form indicates that the search occurred the day after Logan was arrested. Deputy Newman clarified that the photographs were taken on January 5, 2004, but he did not complete the inventory report form until the following day. We note that the report also indicates that the vehicle was impounded from January 5, 2004, to January 6, 2004. Therefore, we find no merit to Logan's argument.
¶ 16. Logan also asserts that the trial court erred in allowing into evidence the blue jewelry box because the admission of "it caused the jury to believe it was recovered from [him]." We note that the jewelry box, like the items mentioned above, was recovered during the inventory search and was listed on the inventory report form. Thus, there is no merit to this issue.

3. Right to Counsel
¶ 17. In this assignment of error, Logan asserts that he did not have an attorney acting on his behalf when he waived arraignment and entered a not guilty plea. Our review of the record reveals otherwise. The waiver bears his court-appointed attorney's signature, his attorney of record at the time; thus, it is reasonable to conclude that Logan was represented by an attorney when he signed the waiver. Furthermore, aside from Logan's unsworn assertion in his brief, he has failed to offer any evidence to support his allegation. There is no merit to this issue.

4. Identification
¶ 18. Logan contends that the trial court erred in allowing the State to elicit eyewitness testimony from Ruby because no pretrial identification procedure was conducted. Logan also asserts that the State failed to ask Ruby if he was the person that she and her husband had seen leaving their home on January 5, 2004. We note at the outset that the State is allowed to proceed as it deems appropriate. Additionally, we point out that the record belies Logan's assertion:
Q. I call your attention to approximately 11:15 o'clock [sic] a.m. on January 5, 2004, and ask you if you had an occasion to see the defendant, William James Logan?
A. Yes, sir.
Q. And where did you see him?
A. He was coming out of my house.
Q. And what was he doing when you saw him?
A. He had a money box in his hands coming out.
Q. He had a money box?
A. Yes, sir.
Q. Whose money box was it?
A. It was Earl's.
Q. Your husband's?
A. Yes, sir.
Q. What did the defendant do when you saw him coming out of the house?
A. He come [sic] on out and got in his car and backed out.
¶ 19. Furthermore, on cross-examination, Ruby remained steadfast that Logan was the person that she had seen leaving her home on January 5, 2004:

*1033 Q. All right. Now, had you ever seen the man exiting your residence before that day?
A. Seen who?
Q. Had you ever seen the man that you saw get into the car, had you ever seen him before?
A. No, sir.
Q. All right. Are you positive that it's the man at the end here or did the sheriff's office tell you that's who it is?
A. No, I'm positive.
In addition to Ruby's positive identification of Logan as the perpetrator, we note that deputies from the Covington County Sheriff's Department apprehended Logan and saw items that had been reported stolen from the Benson residence in plain view in his vehicle. We find no merit to this issue.

5. Ineffective Assistance of Counsel
¶ 20. Logan claims that he received ineffective assistance of counsel from his court-appointed attorney and from his trial attorney. We will address his ineffective assistance claim as it relates to his court-appointed attorney first. In order to establish an ineffective assistance of counsel claim, Logan must satisfy the two-part test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When a defendant asserts that his counsel was ineffective, he has the burden of proving (1) that his counsel's performance was deficient and (2) that the outcome of the trial would have been different but for the deficiency of his counsel's performance. Id.
¶ 21. Logan's ineffective assistance of counsel claim, as it relates to his court-appointed attorney, is based on his contention that he was not informed that the indictment had been amended. The agreed orders authorizing both amendments were signed by Logan's court-appointed attorney and the assistant district attorney. Our review of the record reveals that the problem was created when Logan's court-appointed attorney filed a motion to withdraw in July 2005 and did not follow-up on the motion. Meanwhile, Logan retained an attorney in February 2006. Then, in July 2006, Logan's court-appointed attorney filed a second motion to withdraw, which the court granted shortly thereafter. Logan's retained attorney argued in a posttrial motion that Logan's court-appointed attorney was not authorized to agree to the final amendment because at that time he was no longer Logan's attorney. The problem was compounded by Logan's retained attorney's failure to enter a formal notice of appearance in the record, despite having made appearances on Logan's behalf.
¶ 22. Notwithstanding the confusion, we fail to see how Logan suffered any prejudice. While he argues that he did not become aware of the amendments until during the trial, he does not argue that his defense was adversely affected beyond denying him the opportunity to show that he was in jail on the date contained in the original indictment. As previously noted, Logan seems to be arguing, without specifically saying so, that the State should have been required to stick with the erroneous date contained in the original indictment so that he could have shown that he was in jail on that particular date and could not have committed the crime on that date. This is contorted logic. The changing of a date in an indictment to correctly reflect the date of the crime is not in and of itself a denial of due process. A denial of due process occurs when the defendant has not been given an adequate opportunity to defend. Here, as we have previously noted, Logan does not argue that had he known before trial that the correct date was January *1034 5, 2004, instead of June 5, 2004, he still would have been able to present an alibi defense but that he was deprived of such defense due to lack of sufficient notice. Logan's only argument is that the amendment was made without his knowledge. We point out that the State was free to amend the indictment as long as it complied with Rule 7.09, and we have already concluded that it did. There is no merit to this issue.
¶ 23. As for Logan's ineffective assistance of counsel claim against his retained trial attorney, we also find that this issue lacks merit. Logan contends that his trial attorney was ineffective for leading him "to believe that he was being represented and he technically was not." We have already discussed the events that led to the confusion as to which attorney represented Logan at which point in this process; therefore, we see no reason to rehash that discussion.
¶ 24. Logan also argues that he suffered reversible error because his trial attorney said during voir dire that he was a habitual offender:
[ATTORNEY FOR DEFENDANT]: Now, the State of Mississippi is very ably represented by . . . the District Attorney. I have been retained by Mr. Logan to represent him. All that either of us can ask of you ladies and gentlemen is that you listen to the evidence, look at the exhibits and make up your own mind using your own common sense. And if you have a question, discuss it with your fellow jurors. And if you don't feel the defendant has been proven guilty beyond a reasonable doubt, it's real simple, you find him not guilty. He's not on charge for what he did six or seven years ago; he's on charge for what happened, as they say, on January 5, 2004. All I can ask you to do  make them do it. And I thank you. Logan's trial attorney did not err in informing the jury of Logan's habitual offender status, as the information was included in his indictment. Logan further argues that his counsel's misconduct was compounded when a prospective juror stated during voir dire that his home had also been broken into on the date of the burglaries for which Logan had been charged and that no one had been apprehended for the crime. We do not fully understand this argument. Perhaps Logan believes that his counsel's statement regarding Logan's prior convictions prompted the juror's comments and that he was prejudiced by those comments since his counsel did not request, and the court did not give, a sua sponte instruction to the jury to disregard the comment. Logan has not provided any authority to support his contention that the court was required to give a sua sponte instruction. Therefore, we decline to find error, but even if we were to hold that error occurred, we would find that it was harmless error, as the evidence of Logan's guilt is overwhelming.
¶ 25. Finally, Logan takes issue with the following statement made by his attorney during closing argument:
[ATTORNEY FOR DEFENDANT]: Now, this presumption of innocence, as the instructions tells [sic] you, stays with him all the way through the trial until and unless you become convinced beyond a reasonable doubt that he's guilty. As long as you are sitting there saying well, I just don't know. This looks like he's guilty. This looks like he's not guilty. Then you've got to give the benefit of that doubt to the defendant and say not guilty. I can't get into each of your heads. I know I listen [sic] to some things today and said looks like he did it. Well, I don't know. I guess all us lawyers do that, tit for tat.
*1035 According to Logan, his attorney was, "in effect, bolstering the prosecution's case." We disagree and find no merit to this issue.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY OF CONVICTION OF TWO COUNTS OF BURGLARY AND SENTENCE AS A HABITUAL OFFENDER TO CONCURRENT TERMS OF TWENTY-FIVE YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COVINGTON COUNTY.
KING, C.J., LEE and MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS and CARLTON, JJ., CONCUR.
NOTES
[1] In actuality, Logan asserts eight issues on appeal; however, for the sake of clarity, we have combined similar issues.
[2] Earl was deceased at the time of trial.
[3] The indictment was amended twice before providing the correct date of the burglaries.
[4] At trial Logan offered no defense, as was his right, choosing instead to rest on the presumption of innocence that clothes all criminal defendants. After the close of the State's case, Logan did not argue that the case should be dismissed because the proof was at variance with the indictment, nor did he argue that he had been prejudiced because he thought he was charged with activities allegedly occurring on one date when in fact the State had offered proof of another date.
[5] It is of particular importance that Logan did not argue at trial or in any posttrial motions that he was prejudiced because he was precluded from proving his whereabouts on the date contained in the second amended indictment. What Logan's argument boils down to is this: the State should have been precluded from amending the indictment to show the correct date of the burglaries because doing so prevented him from proving that he could not have committed the burglaries on the erroneous date as initially charged.