# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00760-COA

**DAVID COURSE A/K/A DAVID LEE COURSE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2022 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 04/09/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     David Course was convicted in the Hinds County Circuit Court for the murder of Bernard Williams under Mississippi Code Annotated section 97-3-19 (Rev. 2020) and sentenced as a habitual offender under section 99-19-83 (Rev. 2020). On appeal, Course claims that (1) his right to a fair trial was violated when a witness decided to testify at trial after previously declining to testify; (2) the trial court erred by admitting inadmissible hearsay that violated Course's rights under the Confrontation Clause; (3) the trial court erred by allowing the State to amend the indictment; and (4) the State failed to prove Course's

habitual offender status.

¶2.     We find that Course's right to a fair trial was not violated, and the trial court did not err by allowing the State to amend the indictment. We find that the trial court erred in admitting inadmissible hearsay testimony, but the error was harmless. Accordingly, we affirm Course's murder conviction. However, finding that the State did not admit any evidence to prove Course's habitual offender status, we reverse in part and remand this case to the trial court to resentence Course as a nonhabitual offender.

## FACTS AND PROCEDURAL HISTORY

### Factual Background

¶3.     In mid-February 2020, Course, Williams, Tiffany Norman, Erica Roby, and several other individuals were injecting methamphetamine at a house on West McDowell Road in Jackson. Course and Williams were seen arguing and later that evening Course shot and killed Williams. After Norman placed a blanket over Williams, other individuals helped remove the body and clean up the blood. Everyone left the scene without contacting the police.

¶4.     Williams was a homeless individual who was known throughout the homeless community and by police officers who patrolled South Jackson. Police received a tip that Williams was killed at a house on McDowell Road. Officer Shamieka Bailey and Officer Gillis Brown were both informed of Williams' death and began to investigate. Officer Bailey learned from local individuals that Williams was murdered but that his body had not been found. Officer Brown spoke with a "concerned citizen" member of the homeless community

2

who had information about the murder. Over objection at trial, Officer Brown testified that the concerned citizen identified Course as the person who shot Williams.

¶5.   About ten days after the murder, police found Williams' body. Detective Jasmin Haynes was dispatched and investigated the scene. Williams' body was found in a garbage can and was so badly decomposed that police had to identify him using DNA fingerprinting. Dr. David Arboe performed Williams' autopsy and determined the cause of death was gunshot wounds to the trunk, and the manner of his death was homicide. Detective Haynes testified that an eyewitness of the murder came forward and spoke with her. Detective Haynes testified that her investigation led to Course as the suspect. Her investigation also led to Norman and Roby who were implicated in the murder. The same eyewitness who spoke with Detective Haynes identified Course, Norman, and Roby from lineups.

¶6.   Detective Haynes issued arrest warrants for Course, Norman, and Roby. Once Norman and Roby were arrested, they each waived their *Miranda*[1] rights and talked with the police. During her interview, Roby identified Course as Williams' killer and Norman as the person who helped Course kill Williams.

**Pre-trial Motions**

¶7.   Course was indicted for first-degree murder under section 97-3-19(1)(a). Roby and Norman were also indicted for acting in concert with and/or aiding, abetting, assisting, or encouraging Course's murder of Williams. The original indictment charged Course with murder on or about February 1, 2020. The State moved to amend the indictment to the

---

[1]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

correct date range between February 12, 2020, and February 25, 2020. The State explained that the original date—February 1, 2020—was a scrivener's error because Williams was not murdered until at least February 12, 2020. The State argued this change was one of form and not substance.

¶8. Three weeks after the State's motion, Course filed a "Notice of Alibi" motion, claiming he was in the custody of the Mississippi Department of Corrections (MDOC) on February 1, 2020. Course also filed a motion in opposition to the State's motion to amend the indictment, arguing that amending the indictment would remove a defense for him and that there was no good cause. The trial court granted the State's motion to amend the indictment to correct a range of dates. The court noted that the State's motion was timely and that Course waited three weeks after the motion to file his motion regarding the alibi defense. Furthermore, the trial court agreed with the State that it was no surprise to Course that February 1, 2020, was incorrect because the discovery materials showed the time frame.

¶9. Course first went to trial on March 14, 2022, which ended in a mistrial. Prior to his first trial, Course filed a motion for the State to reveal any plea deals involving his co-defendants and other material State witnesses. The State revealed that there was no deal in place with Norman but that she would be called as a witness, and it had issued a subpoena for her testimony. However, at the start of his first trial, there was still no deal in place, and the State informed the court that Norman would not be testifying.

¶10. The day before Course's second trial, Norman still did not have a plea deal in place, and her attorney informed the parties that Norman was invoking her Fifth Amendment right

4

against self-incrimination. Course informed the trial court and moved to have Norman excluded as a witness because he was worried that Norman invoking her Fifth Amendment right on the stand would prejudice him. The State deferred the decision to the trial court but asked that it could call Norman's name as a potential witness during voir dire. The trial court held its ruling on excluding Norman as a witness in abeyance until she was actually called but allowed the State to name her as a potential witness during voir dire. During voir dire, the State listed Norman as a potential witness. When the State asked the jury if anyone had strong feelings about a potential witness or co-defendant invoking his or her rights on the stand, no jury member gave a response. Course was also able to ask questions regarding a witness invoking these rights, as well as questions about witnesses lying on the stand.

**Trial**

¶11. The trial began on June 6, 2022. The next day, before the first witnesses were called, the trial court was set to have a hearing on Norman being called as a witness. That morning, Norman's attorney informed the State that she would testify truthfully at trial in exchange for her murder charge being remanded to the files. The State informed the court of Norman's decision to testify at the hearing. Course argued that he was not prepared for trial now that Norman would testify, as the day before, Norman was planning to invoke her right not to testify. Course moved to exclude Norman as a witness because it was a "late disclosure," "unfair surprise," and it fundamentally changed Course's defense. Course informed the court that if Norman was not excluded, he would be moving for a mistrial, and if that was denied, he would ask for a continuance to prepare for Norman's testimony.

5

¶12.    The State objected to Course's requests, arguing that Norman's testimony would not be an unfair surprise.  The State noted that Norman had already given her statement implicating Course to the police, and Course had that statement early in discovery.  The trial court agreed, also pointing out that Norman had been listed as a potential witness during voir dire.  The trial court denied Course's requests, finding that (1) there was no surprise as Norman was a potential witness at both trials; (2) Norman's attorney had been in contact with both parties; (3) Course knew the substance of Norman's testimony; and (4) Course suffered no actual prejudice because no plea deal had been offered to Course for him to reject relying on Norman not testifying.

¶13.    The State called Roby and Norman as witnesses.  Roby testified that on the day of the murder, she heard Course and Williams arguing with Course, saying, "Wait 'till I – wait 'till I get through getting my shot.  I'm going to give you what you're looking for.  I'm going to give you what you ask for.  I've been following you."  Roby testified further that later in the evening, she was doing drugs in a back room of the house with Norman and several others when she heard gunshots coming from the front of the house.  When she walked to the front of the house, she saw Williams lying face down on the ground and Course standing over him.  Course was holding a small handgun.  Course said, "You think I give a f--- about killing a motherf-----."  Roby testified that Course then shot Williams' body two more times.  Course demanded that everyone help deal with the body and clean up the blood and said that he was going to burn the house down.  Roby testified that Norman put a blanket over Williams' body while others helped move the body outside the house and clean up the blood.

¶14. Norman also testified about the murder. Norman was in the back room of the house with Roby when she heard gunshots. Once reaching the front of the house, she saw Williams face down and Course standing over him. Norman testified that Course was "[s]tanding there real upset" and was pacing back and forth. Initially, she testified that she did not see Course with a gun, but later in her testimony, she stated that she saw him holding a small gun and that he shot Williams twice while Williams was on the floor. Norman testified that she put a blanket over Williams' body before leaving the house.

¶15. Officer Brown's testimony is an issue in this case.[2] He testified that a "concerned citizen" identified Course as the one who shot Williams. Course objected to his testimony, arguing that it was hearsay and a violation of Course's rights under the Confrontation Clause. The trial judge overruled the objection, stating that the testimony was "part of the investigation" and "not being admitted for the truth of the matter asserted."

¶16. At the conclusion of trial, the jury found Course guilty of first-degree murder. On June 20, 2022, Course was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-83 to life imprisonment without eligibility for parole. After his post-trial motion for judgment notwithstanding the verdict or a new trial was denied, Course appealed.

## STANDARD OF REVIEW

¶17. "When reviewing evidentiary rulings made by the trial court, this Court employs an abuse of discretion standard." *Brown v. State*, 965 So. 2d 1023,1026 (¶10) (Miss. 2007).

---

[2] We discuss Officer Brown's testimony in detail later in the opinion.

7

# DISCUSSION

## (1)    Amending the Indictment

¶18.    Course claims that the trial court erred by allowing the State to amend the indictment to correct the date of the crime.

¶19.    Rule 14.4(a) of the Mississippi Rules of Criminal Procedure states, "For good cause shown, indictments may be amended as to form but not as to the substance of the offense charged. Amendment may be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." "Amendments involving a change in date . . . are merely changes in form and not substance, unless time is an essential element or factor in the crime." *Spears v. State*, 294 So. 3d 637, 644 (¶20) (Miss. Ct. App. 2019) (citing *Baine v. State*, 604 So. 2d 258, 261 (Miss. 1992)).

¶20.    Course argues that the amendment unfairly denied him the opportunity to present his alibi defense. "To understand whether or not the defense would suffer prejudice, this Court must consider whether or not the defenses available to [the defendant] before the indictment was amended would still be available after the trial court granted the motion to amend." *Id.* at (¶21). This Court's opinion in *Logan v. State*, 987 So. 2d 1027 (Miss. Ct. App. 2008), is instructive on this issue. Like the present case, the defendant in *Logan* argued that his alibi defense was prejudiced because prior to the amendment to his indictment, he could have shown he was incarnated at the time. *Id.* at 1030 (¶10). The defendant had no alibi for the amended date of his indictment, so he argued that his defense was no longer available. *Id.* While this Court recognized that the amendment precluded his particular argument, he was

8

still able to assert another alibi defense. *Id.* Stated another way, the defendant was not precluded from proving his whereabouts on the date from the second indictment; he just did not have the facts to support an alibi defense that worked in his favor. *Id.*

¶21. Like in *Logan*, Course was still able to assert an alibi defense for the correct date range in the amended indictment. He just did not have the facts to support an alibi defense. Because time is not an essential element under section 97-3-19, the trial court was correct in finding that the amendment was one of form. Therefore, the trial court did not abuse its discretion in allowing the state to amend the dates in the indictment.

### (2) Norman's Testimony

¶22. Course claims that his right to a fair trial was violated when the trial court allowed Norman to testify in the middle of trial after stating she would not testify, invoking her rights under the Fifth Amendment. Specifically, Course argues that he was not able to fully develop a theory of defense to present at trial and was unable to fully voir dire the jury with that defense in mind.

¶23. "The standard of review for rulings on motions for mistrial [is] abuse of discretion." *Foley v. State*, 914 So. 2d 677, 688 (¶21) (Miss. 2005). "The trial court has considerable discretion in matters pertaining to discovery, and its exercise of discretion will not be set aside in the absence of an abuse of that discretion. Specifically, the decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." *Sanders v. State*, 38 So. 3d 639, 646 (¶23) (Miss. Ct. App. 2010) (citation omitted).

¶24. Course argues that (1) Norman's testimony was a late disclosure; (2) he was unable to develop his theory of defense; (3) he was denied effective assistance of counsel; and (4) he was not able to properly voir dire the jury. We will address each argument in turn.

¶25. Course argues that Norman was a late witness disclosure. Rule 17.2(1) of the Mississippi Rules of Criminal Procedure states that the prosecution must provide the defendant with the following: "Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement (written, recorded or otherwise preserved) of each such witness and the substance of any oral statement made by any such witness[.]" Course does not claim that he did not know Norman was a potential witness or that he did not have her statement. Instead, Course claims what his defense counsel argued at trial: "The fact that we had her statement pretrial is kind of meaningless when we've been informed that [Norman] won't be testifying."

¶26. A similar situation arose in *Sanders*, where the defendant Sanders and his cousin were jointly indicted for the burglary of a convenience store. *Sanders*, 38 So. 3d at 642 (¶11). On the second day of trial, the defendant's cousin—who had previously pled not guilty—changed his plea to guilty to accessory after the fact and agreed to testify for the State. *Id.* The defendant moved for a continuance, arguing that the State's witness had not been discovered and that the defense needed time to check the background of the witness. *Id.* at 643 (¶14). The trial court denied the continuance, after which the defense moved for a mistrial that was also denied. *Id.* On appeal, the defendant claimed the State violated

discovery requirements by failing to disclose the witness prior to trial.[3] *Id.*

¶27.    The *Sanders* court affirmed the trial court finding that the State did not violate the discovery rule. *Id.* at 464 (¶16). This Court found that the record demonstrated the State promptly informed the defendant that his cousin intended to testify as soon as the State knew about his decision. *Id.* at (¶18). Furthermore, the record showed that the defendant had actual knowledge of his cousin's intent to testify in his defense. *Id.* at 466 (¶22). The *Sanders* court noted that neither the defendant nor his cousin moved the trial court for a severed trial. *Id.* This Court stated:

> Logic dictates that in order to come to a decision that a severance was not necessary, the two defense attorneys involved must have discussed their respective client's cases between themselves. This indicates that both attorneys knew enough about their co-defendant's version of events and intentions to come to a reasonable and considered opinion as to whether it would benefit their client to be tried separately.

*Id.* This Court determined that the defendant had ample opportunity to prepare for his cousin's testimony and "made no showing that he would have been better able to meet the prosecution's evidence given more time," so the trial court did not abuse its discretion. *Id.* at 647 (¶¶24-25) (internal quotation marks omitted).

¶28.    In the instant case, Course had prior knowledge of Norman's statement to police in discovery before even the first trial. Course does not claim that Norman's testimony differed from her previous statement to police. Therefore, like *Sanders*, Course cannot claim that Norman's testimony was an unfair surprise. Also like *Sanders*, the State promptly informed

---

[3]    The discovery rule at issue was Rule 9.04 of the Uniform Rules of Circuit and County Court Practice, which is the predecessor to today's Mississippi Rule of Criminal Procedure 17.2.

11

Course of Norman's plea deal and wish to testify as soon as the State knew about it. Course's argument is without merit.

¶29. Course's next argument is that he was unable to develop a theory of defense due to Norman's testimony. However, Course does not specify which theory of defense he was unable to develop. At trial, Course's defense was that he was not who killed Williams. While Norman's testimony contradicted that argument, Course still had the opportunity to cross-examine Norman on the stand. As previously discussed, Course knew the substance of Norman's testimony before trial and should have developed a theory of defense with that in mind. Finally, as the trial court noted, Course was not offered a plea deal, so he cannot argue he was prejudiced by refusing a plea deal in reliance on Norman's decision not to testify.

¶30. Course makes a brief argument that Norman's decision to testify denied Course effective assistance of counsel. "In order to prevail on his claim of ineffective assistance, [Course] must demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that but for his attorney's errors there is a reasonable probability that the outcome of his proceeding would have been different." *Bolden v. State*, 166 So. 3d 568, 573 (¶14) (Miss. Ct. App. 2015) (internal quotation marks omitted).

¶31. Course's argument fails on both counts. First, he has not met his burden to demonstrate his trial counsel's assistance fell below an objective standard of reasonableness. Course's only argument here was that his trial counsel admitted he was unable to develop a theory of defense with Norman's testimony. Course's counsel still provided a theory of

defense—that Course did not commit the crime. Further, Course points to nothing else to demonstrate his attorney's incompetence. Second, Course provides no support that his outcome would have been any different but for his attorney's errors. This argument is meritless.

¶32. Finally, Course argues that he was not able to fully voir dire the jury with Norman's testimony. This argument also fails because Course knew the substance of Norman's testimony, regardless of whether she was going to testify or not. Also, the State named Norman as a potential witness during voir dire and the indictment named her as a co-defendant. Course was able to voir dire the jury about witnesses lying on the stand. This related well to his theory of defense that he did not commit the murder. Course's argument is without merit.

¶33. We find that Course was not denied a fair trial and the trial court did not abuse its discretion by allowing Norman to testify or denying Course's motions for a continuance and mistrial.

### (3) Hearsay of Officer

¶34. Course claims that the trial court erred by allowing inadmissible hearsay to be admitted through Officer Brown's testimony. In addition, Course argues that allowing Officer Brown's statements regarding the "concerned citizen" violated the Confrontation Clause of the Sixth Amendment.

¶35. During Officer Brown's testimony, the following exchange occurred:

> Q. And what information did your investigation uncover?
> A. As I was patrolling my area on Norwood and Rosemary

13

Avenue, I came across a concerned citizen, a homeless person that advised that he had pertinent information in reference to the murder.

Q.  Okay.  And what pertinent information did your investigation --

By Ms. Spencer:  Withdraw that question, your Honor.  Let me rephrase.

By Ms. Spencer:  (continuing)

Q.  Who did your investigation uncover was the person involved in the murder?

A.  Buddy Row.

By Mr. Williams:  Your Honor, objection.  Hearsay and confrontation.

By the Court:  Sustained.  Rephrase.

By Ms. Spencer:  (continuing)

. . . .

Q.  Did your investigation uncover who the shooter was?

A.  Yes.

Q.  Who was the shooter --

By Mr. Williams:  Your honor, objection.  Hearsay and confrontation.

By the Court:  Overruled.  It's part of the investigation.  It's not being admitted for the truth of the matter asserted.

By Ms. Spencer:  Yes, your Honor.

By Ms. Spencer:  (continuing)

Q.  So who did your investigation uncover was the person who shot Bernard.

A.  Well, David Course goes by the street name of Buddy Row.

Course claims that there is no other way to interpret this line of questioning than, "I was told that David Course was the shooter."  Given these circumstances, we agree.

¶36.   "Our Supreme Court and this Court have held repeatedly that out-of-court 'statements do not constitute hearsay when admitted' *not* to prove the truth of the matter asserted but rather 'to explain an officer's course of investigation or motivation for the next investigatory step.'"  *Stevens v. State*, 312 So. 3d 1205, 1209 (¶9) (Miss. Ct. App. 2021) (quoting *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020)).  This Court in *Stevens* found that it was not hearsay for the police officer on the stand to testify that he ran the defendant's name

14

through a database, found that he had pawned a concrete saw (the same as the one that was stolen), and then interviewed the defendant about the theft at the Neshoba County jail. *Id.* at (¶10). We held that this testimony was offered "to explain the course of his investigation and his motivation for his next investigatory step." *Id.* However, we also found that the trial court erred by allowing the ticket document from the database to be admitted into evidence because "[the officer] had already explained why his investigation focused on [the defendant] as the main suspect. There was no need to offer further documentary evidence of the pawnshop transaction." *Id.* at (¶11). The additional evidence was offered only to prove the truth of the matter asserted. *Id.*

¶37. In the instant case, the State attempted to elicit similar testimony from Officer Brown but went too far. The State did not need to ask Officer Brown, "Who was the shooter?" to help Officer Brown explain the course of his investigation. It was enough for the jury to know that a "concerned citizen" had information regarding the shooting and that it led to Course as a suspect. Here, this line of questioning, when taken together, goes to prove the truth of the matter asserted—that Course shot Williams. Officer Brown and the other police officers who testified could testify that their investigations led them to believe Course was the shooter. But ultimately, Officer Brown's testimony was inadmissible hearsay.

¶38. In addition, Officer Brown's testimony violated Course's rights under the Confrontation Clause. "The Confrontation Clause of the Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.'" *Corbin v. State*, 74 So. 3d 333, 337-38 (¶13) (Miss. 2011) (quoting

*Davis v. Washington*, 547 U.S. 813, 821 (2006)). "Thus, the admission of a testimonial statement of a witness who does not appear at trial is barred, unless that witness is unavailable, and the defendant has had a prior opportunity for cross-examination." *Id.* at 338 (¶13). A "testimonial" statement is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact," and examples include "police interrogations and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* (internal quotation marks omitted).

¶39. While Officer Brown did not testify using the "concerned citizen's" exact statement, it was clear from his testimony that the "concerned citizen" told Officer Brown that Course shot Williams. This statement was testimonial, as the witness was aiding a police officer in an investigation, and "the statement was such that an objective witness would reasonably believe the statement would be available for use at a later trial." *Id*. at (¶14). The trial court erred by admitting this testimony.

¶40. While we find that allowing this testimony was error, we also find that its admission was harmless. "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Jackson v. State*, 245 So. 3d 433, 439 (¶32) (Miss. 2018) (quoting *Pham v. State*, 716 So. 2d 1100, 1102 (¶12) (Miss. 1998)). The State had two eyewitnesses who saw Course shoot Williams and testified to such. While Officer Brown's testimony crossed the line into inadmissible hearsay territory, this evidence was cumulative and weaker evidence than Norman's and Roby's

accounts of the murder, as well as Officer Bailey's similar, admissible testimony. The inclusion of Officer Brown's testimony was harmless error.

**(4)     Sentencing**

¶41.    Course claims that the State failed to prove Course's habitual offender status beyond a reasonable doubt. The State, in its appellate brief, agrees with Course. "For this Court to affirm an enhanced sentence . . . the trial court's basis for imposing the sentence must appear in the record." *Short v. State*, 929 So. 2d 420, 426 (¶17) (Miss. Ct. App. 2006). While the trial court had a copy of Course's MDOC pen pack at the sentencing hearing, the State failed to admit the pen pack into evidence. A review of the record before us confirms this fact and neither party disputes it.

¶42.    A similar situation occurred in *Grayer v. State*, 120 So. 3d 964 (Miss. 2013). In *Grayer*, the defendant was charged as a habitual offender under section 99-19-81. *Id.* at 967 (¶6). While the State provided the circuit court with certified copies of the defendant's convictions, it failed to place the certified copies into the record and offered no other evidence of the defendant's habitual offender status, other than "a recitation of his prior felony convictions." *Id.* at 969 (¶19). Despite the defendant not objecting to this at his sentencing hearing, the supreme court found that it rose to the level of plain error. *Id.* at 969 (¶¶14, 19). Furthermore, the supreme court explained that the State does not get a second chance to prove the defendant's habitual offender status on remand as it would be a double jeopardy violation. *Id.* at 970 (¶20). After affirming his conviction, the supreme court reversed the defendant's sentence and remanded the case for resentencing as a nonhabitual

offender. *Id.* at (¶22).

¶43.    Likewise, we find that the trial court committed error by sentencing Course as a habitual offender without proof of his prior convictions in the record. Therefore, we reverse his sentence and remand this case for Course to be resentenced as a nonhabitual offender.

## CONCLUSION

¶44.    The trial court did not abuse its discretion by allowing the State to amend the indictment. Furthermore, the trial court did not abuse its discretion by allowing Norman to testify and denying Course's motions for a continuance and a mistrial. While we find that the trial court erred by allowing Officer Brown to testify using inadmissible hearsay, we also find that this error was harmless and does not require reversal. As such, we affirm Course's conviction under section 97-3-19. However, the record does not prove Course's habitual offender status; thus, we reverse his sentence and remand the case for Course to be resentenced as a nonhabitual offender.

¶45.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**