GRIFFIS, J.,
for the Court:
¶ 1. Betty Weems was convicted by the Circuit Court of Sunflower County for the offense of willfully and feloniously taking contraband onto the premises of the Mississippi State Penitentiary in violation of Mississippi Code Annotated section 47-5-193 (Supp.2009). On appeal, Weems asserts the following assignments of error: (1) improper cross-examination of Weems, (2) improper closing argument by the State, (3) cumulative errors, (4) ineffective assistance of counsel, and (5) lack of evidence to support the conviction. We find no error and affirm.
FACTS
¶ 2. On May 7, 2005, Weems went to the Mississippi State Penitentiary in Parch-man, Mississippi, to visit her son, Victor Weems. Weems rode with her daughter, Jena Ponder, in Jena’s car. It was them first time to visit with Victor at Parchman.
¶ 3. Before going into the facility, Weems and Jena placed their purses in the trunk of the car. At the entrance to Parchman, the Mississippi Department Of Corrections has posted written notice that informs visitors that no money is allowed on the premises. The guards informed Weems and Jena that they could not bring more than five dollars into the facility. Because they both brought money, Weems and Jena walked back to the car and placed their money in the trunk of Jena’s car.
¶ 4. After returning, MDOC Correctional Officer Barbara Brady searched Weems. Officer Brady requested that Weems take off her bra and expose the inside of the bra. Officer Brady testified that Weems failed to comply. Officer Brady testified that Weems had “her arms clinched” by her side, and she would not “shake [her bra],” as requested. When asked to comply, Weems told Officer Brady there was “nothing in my bra.” Officer Brady pulled the bra out and looked inside. Officer Brady testified that she saw money “sticking from under the side of the bra.” The money was between the bra and the padded cushion. The money was near Weems’s left arm pit.
¶ 5. Officer Brady then took Weems to see Lt. Stevenson[1]. She then asked Weems “to take that out of your bra, please.” The money consisted of a one-hundred-dollar bill folded with five twenty-dollar bills.
¶ 6. Weems was indicted and charged with the violation of Mississippi Code Annotated section 47-5-193, which provides:
It is unlawful for any ... person or offender to possess, furnish, attempt to furnish, or assist in furnishing to any offender confined in this state any ... contraband item. It is unlawful for any person or offender to take, attempt to take, or assist in taking any ... contraband item on property belonging to the [MDOC] which is occupied or used by offenders, except as authorized by law.
¶ 7. At trial, Weems testified that she had tucked the money in her bra for safekeeping on the morning of May 7th. She admitted that she had brought the money into the MDOC facility. However, she claimed that she had forgotten that she *583 had tucked the money in her bra until the guard found it.
¶ 8. The jury found Weems guilty, and she was sentenced to three years in the custody of the MDOC. However, Weems’s sentence was suspended conditioned upon her successful completion of the Intensive Supervision Program. She was also ordered to pay court costs and a $3,000 fíne. Weems filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial which was denied.
ANALYSIS

1. The prosecutor committed reversible error in questioning Weems about statements she allegedly made to an officer at Parchman which the prosecution insinuated were inconsistent with her trial testimony without introducing the actual statements and in following up this improper cross-examination with questions to Jena Ponder about a letter allegedly written by her brother, Victor Weems.

¶ 9. Weems’s first issue claims error when the prosecutor questioned Weems and Jena about a letter from Victor. The letter was never offered or admitted into evidence. The State responds that the issue was waived because no specific objection was made at trial.
¶ 10. On cross-examination, the prosecutor asked Weems the following questions:
Q. Ms. Weems, isn’t it true that during the week of April 24th of 2005[sic] your son wrote you a letter asking you to bring him money on May 7th?
A. It is not.
Q. Did you tell [the officers] when they asked you: Did Inmate Weems ask you to bring him the money, and you told them — “Ms. Weems stated that Inmate Weems asked her for money; however, he did not ask her to bring any money on May 7th, 2005. Stated she received a letter at her residence from Inmate Weems during the week of April 24th, 2005, indicating that he would like for her to bring him some money.” Do you remember that?
A. No, because it didn’t happen.
A. The investigator asked me if he [had] asked me for money. The answer to that was, he would tell me how much money he wanted in the account if he needed money, but I did not say that he asked me to bring him money to this prison.
Q. Do you remember telling the investigators that you had faxed [them] a copy of the letter that you got from your son asking for the money that evening?
A. Absolutely not, because I told him there was no letter. I told him I could not recall getting a letter even asking for that (referring to the $200.00 she put in his prison account the previous week). He (referring to the investigator) looked in the computer, saw the 200-dollar deposit that had been made. I couldn’t even remember him asking me for that. And I told him if I could find a letter — and I had no reason not to, because it was legal for me to put money in his account. I had done that. I could not recall him asking. And after getting home and looking in my receipts, I found one [deposit] that I had made five days prior to the 7th, and it was for $200.00.
*584 Q. Ms. Weems, do you remember telling the officers you would fax them a copy of the letter?
A. I told him if I could find it, I would. I did not tell him that I got it. I could not remember getting it.
Q. Do you remember the officer[s] coming by to retrieve a copy of the letter and you told them then, “I did what I had to do”?
A. And he frightened me to death. I walked out. He was standing on my patio, and I’ve never been as shocked and surprised in my life.
Q. So you’re denying that he [Inmate Weems] asked you to bring him money?
A. I am absolutely denying that he asked me to bring him money. I deposited money in his account.
Q. So these officers just lied when they wrote up this report?
A. No, just one. One person asking me that.
¶ 11. Also, on cross-examination, the prosecutor asked Jena the following:
Q. Okay, Now did you see the letter that your brother wrote asking your mother to bring money?
A. No.
Q. You didn’t see that?
A. No.
Q. Were you aware she had gotten that letter?
A. No.
¶ 12. The record does not reflect that Weems’s counsel made a contemporaneous objection. The failure to make a contemporaneous objection waives the issue on direct appeal. Wells v. State, 698 So.2d 497, 514 (Miss.1997). Rule 103 of the Mississippi Rules of Evidence provides:
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; ...
Here, Weems’s counsel did not make contemporaneous objection. Therefore, we find that this issue is procedurally barred.
¶ 13. We also recognize that if “[t]he defendant who fails to make a contemporaneous objection, then the defendant must rely on plain error to raise the assignment [of error] on appeal.” Foster v. State, 639 So.2d 1263, 1289 (Miss.1994). Such error exists where it affects substantial rights of the defendant. Grubb v. State, 584 So.2d 786, 789 (Miss.1991). The plain-error doctrine includes the review of errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
¶ 14. Under Mississippi Rule of Evidence 607, “[t]he credibility of a witness may be attacked by any party....” The prosecutor sought to impeach Weems by offering statements she purportedly had made to the officer and a letter she supposedly had received. This evidence could have been admitted through the officer or as an exhibit, and both would have impeached Weems’s testimony and provided positive evidence of her guilt. However, the prosecutor only asked Weems about whether she had made statements to the officer and if she had received the letter. Weems denied the statements and the receipt of the letter. Jena also denied the existence of the letter.
*585 ¶ 15. Evidence, which is otherwise inadmissible, may be used for impeachment purposes only. Mendenhall v. State, 18 So.3d 915, 920 (¶23) (Miss.Ct.App.2009). See M.R.E. 613. Rule 613 provides:
(a) Examining Witness Concerning Pri- or Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
In Everett v. State, 835 So.2d 118, 120-21 (¶ 7)(Miss.Ct.App.2003), this Court stated:
Mississippi Rules of Evidence 613 allows the impeachment of witnesses with their prior inconsistent statements in two ways. The first is by reading the statement to the witness and asking whether that statement accurately reflects the testimony given on the occasion when the statement was recorded. M.R.E. 613(a). On the other hand, a party may use extrinsic evidence. M.R.E. 613(b). This can be done by putting on other witnesses who will introduce facts discrediting the previous witness’s testimony.
¶ 16. Here, the prosecutor’s effort was an attempt to impeach Weems’s testimony under Mississippi Rule of Evidence 613. However, the effort to impeach either failed, or it was abandoned. The prosecutor attempted to elicit evidence of prior inconsistent statements and to offer extrinsic evidence to contradict Weems’s testimony. Weems denied the statements so the jury was left with the impression that there were neither prior inconsistent statements nor a letter. This information was not mentioned again in the trial. Had the prosecutor argued that during closing argument this information was evidence admitted against Weems, then this could possibly be considered error. However, since it was not used by the prosecutor, we cannot find it to be reversible error.
¶ 17. Indeed, we recognize that Weems’s counsel could have asked for a limiting instruction or could have argued that these denials would support the jury’s finding of not guilty. Defense counsel could have argued that the prosecutor talked about this letter, but the State never produced it because it did not exist. However, for whatever reason, defense counsel’s trial strategy was not to mention it any further. We cannot find that this rises to the level of plain error.
¶ 18. Accordingly, we find this issue is procedurally barred on appeal and without merit.

2. The prosecutor committed reversible error by arguing facts not in evidence thereby depriving Weems of due process and a fair trial.

¶ 19. Weems argues that the prosecutor argued facts which were not in the evidence during closing argument. The State responds that any appealable issue was waived because there was no contemporaneous objection made at trial. We conclude this issue is procedurally barred.
¶ 20. Notwithstanding the procedural bar, Weems’s argument fails because the State did not commit error during closing argument. The Mississippi Su *586 preme Court has long held that attorneys are accorded a broad scope in closing arguments with few exceptions. Ballenger v. State, 667 So.2d 1242, 1270 (Miss.1995) (citations omitted). In Monk v. State, 532 So.2d 592, 601 (Miss.1988) (overruled on other grounds), the supreme court stated that:
The right to argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel’s argument is within limits of proper debate, it is immaterial whether it is sound or unsound or whether he employs wit, invective, and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of the day, which, although not legitimate, are generally disregarded by the court, because in its opinion, they are harmless. There are, however, certain well established limits beyond which counsel is forbidden to go. He must confine himself to the facts introduced in evidence and to the fair and reasonable deduction and conclusions to be drawn therefrom and to the application of the law, as given by the court, to the facts.
(Emphasis added).
¶ 21. In this case, during closing argument, the prosecutor stated:
Now, ladies and gentleman, some of these men may not know this, but I don’t know that I have ever seen a woman that carried her money in her bra and put in her armpit.... I have never seen it done, and I don’t think that this defendant was just hiding her money there from somebody on the tennis court. She is intentionally trying to hide the money. She knows it’s there, she takes it in, and if you can’t tell you’ve got $200 stuck in your bra — I know these gentlem[e]n may not understand all that, but I submit that you ladies do, that if you can’t tell you’ve got a wad of cash stuck up in your bra, if that’s not uncomfortable, and you don’t put it under your armpit. She knew it was there.
¶ 22. The prosecutor’s argument was based on inferences from the facts that were in the record. Accordingly, we find that this issue is procedurally barred and without merit.
3. The Court should reverse because cumulative error of the prosecutor deprived Weems of due process and a fair trial.
¶ 23. In her brief, under this issue, Weems argues that it was reversible error for the prosecutor to ask Weems if she thought that the officers had lied when they wrote up the report. Weems contends that Mississippi law prohibits questioning one witness about another witness’s credibility or asking one witness to give an opinion as to the truthfulness of another witness’s statements. See M.R.E. 608. The State responds that this issue was waived because the defense failed to make a contemporaneous objection at trial.
¶ 24. The State is again correct. “Failure to make a contemporaneous objection [at trial] waives an issue for purposes of appeal.” Spicer v. State, 921 So.2d 292, 305 (¶ 22) (Miss.2006). Weems failed to object to this question during cross-examination. Accordingly, the objection is waived, and the issue cannot be raised on appeal.
¶ 25. To warrant reversal on an issue, a party must show both error and a resulting injury. Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969). An error is only grounds for reversal if it affects the final *587 result of the case. Id. We are mindful that:
Attorneys are afforded wide latitude in arguing their cases to the jury but are not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. We will review allegations of misconduct to determine whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.
Ross v. State, 954 So.2d 968, 1001 (¶ 70) (Miss.2007) (internal citation and quotations omitted).
¶ 26. The prosecutor asked Weems this question in order to attack her credibility. It does not rise to the level of “tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.” Id. The State asked Weems whether she thought the officers were lying after the State had impeached her testimony. Since the State had shown that the officer’s report was contradictory to what Weems claimed at trial, the question did not further the State’s case or unduly influence the jury. Accordingly, notwithstanding the waiver, we find no error, and this issue is also without merit.
¶ 27. We note that the heading of this issue, as used by Weems, is different from the argument in her brief. The preceding issue considered the specific matter argued under this heading. Weems contends that the cumulative errors committed at trial warrant reversal. However, since we have found no merit to any of Weems’s assigned errors, we find no cumulative error. “As there was no reversible error in any part, so there is no reversible error to the whole.” McFee v. State, 511 So.2d 130, 136 (Miss.1987). Accordingly, this issue is without merit.
A Weems received ineffective assistance of counsel.
¶28. Weems claims ineffective assistance of counsel because defense counsel failed to object to all of the issues raised in this appeal. Specifically, Weems claims that her counsel was ineffective due to his failure to (1) object to the State’s cross-examination of her and Jena; (2) object to the State’s questions to Weems about the officer’s veracity; and (3) object to the State’s remarks during closing argument. She claims that, had her defense counsel been effective, a reasonable jury would have found her not guilty.
¶ 29. To prove ineffective assistance of counsel, Weems must show that: (1) her counsel’s performance was deficient, and (2) this deficiency prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Weems to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694,104 S.Ct. 2052.
¶ 30. Furthermore, the merits of an ineffeetive-assistanee-of-eounsel claim on direct appeal should be addressed only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d *588 1099, 1101 (¶ 5) (Miss.Ct.App.1999). If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.” Id. Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. Id. at 1102 (¶ 6).
¶ 31. Weems asserts that counsel was ineffective due to his failure to object to the issues raised in this appeal. However, we found that despite counsel’s failure to object, there was no underlying reversible error. We find that the record before us on appeal is insufficient to show affirmatively ineffective assistance of counsel of constitutional dimensions. As such, we deny relief on this issue without prejudice so that Weems may present an ineffective-assistance-of-counsel claim in a motion for post-conviction collateral relief if she so chooses.

5. The evidence is constitutionally insufficient to support the conviction.

¶ 32. Our standard of review relating to the legal sufficiency of evidence is well settled:
In reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not determine whether from the evidence we would have voted to convict or acquit. Rather, we view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied.
Readus v. State, 997 So.2d 941, 944 (¶ 13) (Miss.Ct.App.2008) (internal citations omitted).
¶ 33. Pursuant to Mississippi Code Annotated section 47-5-193, “it is unlawful for any person or offender to take, attempt to take, or assist in taking any weapon, deadly weapon, .... or contraband item on property belonging to the department which is occupied or used by offenders, except as authorized by law.”
¶ 34. Weems testified that she brought money into Parchman, an MDOC facility. Although, Weems denied knowingly bringing the money inside Parchman, Officer Brady testified that she found the money inside Weems’s bra. Accordingly, there was sufficient testimony to support the jury’s verdict that Weems was guilty of bringing contraband into a prison in violation of Mississippi Code Annotated section 47-5-193. Accordingly, we find no merit to this issue.
¶ 35. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION OF TAKING CONTRABAND ON THE PREMISES OF THE MISSISSIPPI STATE PENITENTIARY AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO BE COMPLETED IN THE INTENSIVE SUPERVISION PROGRAM AND TO PAY A $3,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.

. Lt. Stevenson’s first name is not in the record.