# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01029-COA

**ROBERT ANDY PINTER**                                        APPELLANT

v.

**STATE OF MISSISSIPPI**                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER N. AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY T. GERBER |
| NATURE OF THE CASE: | CRIMINAL FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, POSSESSION OF AT LEAST ONE-TENTH BUT LESS THAN TWO GRAMS OF METHAMPHETAMINE, AND SENTENCED AS A HABITUAL OFFENDER TO THREE YEARS, WITHOUT ELIGIBILITY FOR PAROLE OR REDUCTION OF SENTENCE, AND FINED $2,000; COUNT II, POSSESSION OF LESS THAN THIRTY GRAMS OF MARIJUANA, AND FINED $250; AND COUNT III, POSSESSION OF LESS THAN 100 DOSAGE UNITS OF ALPRAZOLAM, AND SENTENCED AS A HABITUAL OFFENDER TO ONE YEAR, WITHOUT ELIGIBILITY FOR PAROLE OR REDUCTION OF SENTENCE, WITH THE SENTENCE FOR COUNT III TO RUN CONSECUTIVELY TO THE SENTENCE FOR COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED IN PART, VACATED AND REMANDED IN PART - 06/06/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Robert Andy Pinter was convicted of possession of at least one-tenth of a gram but less than two grams of methamphetamine, possession of less than thirty grams of marijuana, and possession of less than 100 dosage units of alprazolam (Xanax) and sentenced to serve a total of four years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender.  On appeal, Pinter argues that (1) his wife's testimony that he had been known to use marijuana and methamphetamine rises to the level of plain error or ineffective assistance of counsel; (2) the trial judge erred in denying his motion to suppress evidence of the drugs at issue and his alleged statement to police; (3) the evidence is insufficient to support the conviction or, alternatively, the verdict was against the overwhelming weight of the evidence; and (4) his sentence as a habitual offender is illegal and plain error.

¶2.     We find no error in Pinter's trial and therefore affirm his convictions.  We also hold that the trial court did not commit plain error by finding that Pinter is a habitual offender.  Therefore, we also affirm Pinter's sentence as a habitual offender on Count I, possession of methamphetamine.  However, the State concedes error insofar as the trial court sentenced Pinter as a habitual offender on Count III, possession of alprazolam, a misdemeanor offense that is outside the scope of the habitual offender statute.  Therefore, we remand for resentencing on Count III only.

**FACTS**

2

¶3.     On June 15, 2015, at approximately 10:45 a.m., Sebastopol Chief of Police Daniel Ogletree was observing traffic on Highway 21 from the parking lot of the Carquest across from the Piggly Wiggly in Sebastopol. A Nissan Sentra passed by, and Chief Ogletree observed that its driver was not wearing a seatbelt, so he initiated a traffic stop. Chief Ogletree approached the vehicle, explained the reason for the stop, and asked the driver for his license. The driver, Pinter, said that the seatbelt was broken and that his license was suspended. Pinter gave Chief Ogletree his Mississippi Identification Card. Chief Ogletree called the Scott County Sheriff's Department, confirmed that Pinter's license was suspended, and also learned that there was an active warrant for Pinter's arrest. Chief Ogletree then placed Pinter in handcuffs and under arrest and moved Pinter to the backseat of his patrol car.

¶4.     Chief Ogletree then conducted an inventory search of the Sentra. In the trunk, he found two bags containing a crystal-like substance that was later determined to be methamphetamine, with a total combined weight of about half a gram; two bags containing a green leafy substance, later determined to be marijuana, with a total combined weight of approximately twenty-two grams; and a bag containing twenty-five pills, later determined to be alprazolam (Xanax). The drugs were on top of a large, open tool bag. Chief Ogletree testified that he returned to his patrol car and read Pinter his *Miranda* rights from a card that Chief Ogletree kept in his wallet. Chief Ogletree testified that Pinter listened and then stated that he understood his rights. Pinter did not ask for a lawyer or invoke his right to remain silent. Chief Ogletree showed Pinter the drugs and asked why he had them in the trunk of

3

the car.  According to Chief Ogletree, Pinter responded that "he liked the way that it made him feel when he . . . used the drugs."

¶5.     Pinter was indicted for possession of at least one-tenth of a gram but less than two grams of methamphetamine, possession of less than thirty grams of marijuana, and possession of less than 100 dosage units of alprazolam.  His case proceeded to a jury trial on June 6, 2016.  Chief Ogletree and a forensic scientist from the Mississippi Crime Laboratory testified for the State.

¶6.     After the State rested, Pinter's wife, Hope Pinter, testified that she and Pinter lived in a camper on a lot outside of Sebastopol.  Hope's mother and sister and their families also lived on the lot in a separate camper and trailer.  A total of nine adults lived on the lot, and all had access to and drove the Sentra, which was registered to Hope's mother.  Hope testified that her sister and her sister's boyfriend had used the car the night before Pinter's arrest and had returned that morning.  On cross-examination, Hope acknowledged that Pinter worked in construction and owned a large bag of tools.  Without objection, she also testified as follows:

> Q.     Has your husband been known to use weed -- marijuana?
>
> A.     Uh-huh.
>
> Q.     He does?
>
> A.     Uh-huh.
>
> Q.     Xanax?

4

A.      No.

Q.      Never seen him use Xanax before?

A.      No.

Q.      Never, not once?

A.      No.

Q.      Methamphetamine?

A.      Yes, sir.

¶7.     Pinter then took the stand in his own defense. Pinter testified that he did not see Chief Ogletree remove the drugs from the Sentra, and he denied that the drugs belonged to him. Pinter also denied that he owned a tool bag. He testified that he only owned a "tool apron." Pinter also denied that Chief Ogletree read him his *Miranda* rights or that he ever told Chief Ogletree that the drugs were his or that they made him feel good. Pinter testified that the Sentra belonged to his mother-in-law and that he only used it when he needed it. He testified on direct examination that he had used marijuana and methamphetamine. On cross-examination, he also admitted that he had used Xanax in the past. Pinter claimed that he had "no knowledge" whatsoever as to who owned the drugs at issue in this case.

¶8.     The jury found Pinter guilty on all three counts. At Pinter's sentencing hearing, the State offered to introduce certified copies of judgments reflecting seven prior felony convictions: two for grand larceny, three for burglary of a dwelling, and one each for aggravated assault and escape from a jail. Pinter's counsel specifically stated that he did not

5

object to the admission of the documents, but the documents were never formally admitted into evidence. The court then found that Pinter was a habitual offender, *see* Miss. Code Ann. § 99-19-81 (Rev. 2015), and sentenced him to serve a total of four years in MDOC custody, without eligibility for probation or parole.[1] Pinter subsequently filed a motion for a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶9. As stated at the outset of this opinion, Pinter raises four issues on appeal. We address these issues, three of which include two sub-issues, below.

### I. Pinter's Prior Drug Use

¶10. Pinter first argues that the admission of his wife's testimony that he had "been known to use" marijuana and methamphetamine (*see supra* ¶6) constitutes plain error or that his attorney's failure to object to these questions constitutes ineffective assistance of counsel. For the reasons that follow, we conclude that the testimony does not rise to the level of plain error. We decline to address any ineffective assistance claim without prejudice to Pinter's right to raise the issue in a properly filed motion for post-conviction relief.

### A. Plain Error

---

[1] *See* Miss. Code Ann. § 41-29-139(c)(1)(B) (Supp. 2016) (providing that simple possession of more than one-tenth grams but less than two grams of a Schedule I or II substance other than marijuana is punishable by imprisonment for not more than three years); *id.* § 41-29-139(c)(2)(A) (providing that simple possession of less than thirty grams of marijuana is a misdemeanor punishable by a fine of $100 to $250); *id.* § 41-29-139(c)(3)(A) (providing that simple possession of less than 100 dosage units of a Schedule III, IV, or V substance is a misdemeanor punishable by confinement of not more than one year).

¶11. Pinter argues that evidence of his prior drug use was inadmissible under Mississippi Rules of Evidence 404(b) and 403 and that the trial court committed "plain error" by failing to sua sponte direct Pinter's wife not to answer questions on the subject. We conclude that Pinter fails to demonstrate "plain error" for multiple reasons.

¶12. First, "in order to determine if plain error has occurred, *we must determine if the trial court has deviated from a legal rule*, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial." *Green v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016) (emphasis added; brackets and quotation marks omitted). We recently addressed a similar claim of "plain error" based on hearsay testimony admitted without a contemporaneous objection. There, we stated:

> No "legal rule" requires a trial judge to exclude hearsay in the absence of an objection. Trial judges are not expected to strike or exclude hearsay sua sponte. Whether to object is a decision left to the discretion of counsel, who may have strategic reasons for not objecting. . . . [A] trial judge [is not required] to insert herself into the role of counsel and sua sponte raise hearsay objections on the defendant's behalf (or risk subsequent reversal based on "plain error"). Because no "legal rule" requires that of a trial judge, the judge in this case committed no error—plain or otherwise—by not acting sua sponte to prevent or strike [hearsay] testimony.

*Shaheed v. State*, 205 So. 3d 1105, 1112 (¶21) (Miss. Ct. App. 2016).

¶13. The same reasoning applies to testimony about Pinter's prior drug use. Such testimony may be admissible depending on its purpose, *see* M.R.E. 404(b)(2), and whether to object to it "is a decision left to the discretion of [trial] counsel, who may have strategic reasons for not objecting." *Shaheed*, 205 So. 3d at 1112 (¶21). As such, the trial judge in

7

this case did not deviate from any "legal rule" by not inserting himself into the role of defense counsel and striking or prohibiting the testimony sua sponte. No error, plain or otherwise, was committed.

¶14. Moreover, precisely because there was no objection, we cannot say whether Hope's testimony might have been elicited for a permissible purpose. Even if there had been a contemporaneous objection, evidence of Pinter's prior drug use could have been admitted for any purpose other than proving his character in order to show that he acted in conformity therewith. M.R.E. 404(b). "When, as here, a defendant does not physically possess the illegal drugs, the State must prove constructive possession of the drugs in order to prevail." *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011). "To support a conviction for possession of a controlled substance, there must be sufficient facts to warrant a finding that the defendant was aware of the presence *and character* of the particular substance and was intentionally and consciously in possession of it." *Id.* (quoting *McClellan v. State*, 34 So. 3d 548, 553 (¶15) (Miss. 2010)) (emphasis added; quotation marks and brackets omitted). Thus, for example, it is conceivable that evidence of Pinter's familiarity with the controlled substances at issue would have been relevant and admissible to show his awareness of the *character* of the contents of the bags, which were readily observable in the trunk of the car. Therefore, we also cannot say that it "is plain, clear, or obvious" that the evidence would have been inadmissible, had there been a proper objection. *Green*, 183 So. 3d at 31 (¶6) (brackets omitted). This also forecloses any claim of "plain error." *Id.*

8

¶15.   Finally, when Pinter took the stand, his own attorney elicited the same testimony—that he had used marijuana and methamphetamine in the past.  "[A] criminal defendant who fails to object to evidence introduced by the State may still have the issue reviewed on appeal for plain error.  *However, a criminal defendant who affirmatively introduces evidence himself may not then complain on appeal that he introduced that evidence*."  *Pascagoula–Gautier Sch. Dist. v. Bd. of Supervisors of Jackson Cty.*, 212 So. 3d 742, 750 n.9 (Miss. 2016) (emphasis added; internal citation omitted); *see also Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992) ("It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial.").  As noted above, a defendant claiming plain error must also show that the alleged error "prejudiced the outcome of the trial."  *Green*, 180 So. 3d at 31 (¶6).  Pinter cannot make the requisite showing of prejudice because his own attorney separately elicited the same testimony.

¶16.   For each of the foregoing reasons, Hope's testimony about Pinter's prior drug use was not "plain error."

### B.   Ineffective Assistance

¶17.   Pinter also argues that his trial counsel provided ineffective assistance by failing to object to the State's questions about his prior drug use and then eliciting the same testimony from him.  To prevail on such a claim, a defendant must show not only that counsel's performance fell below the minimum constitutional standard of *Strickland v. Washington*, 466 U.S. 668, 686-88 (1984), but also that counsel's errors were prejudicial, i.e., "so serious

9

that they deprived the defendant of a fair trial, that being a trial with a reliable result."

*Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006). "If either prong is not met, the claim fails." *Id.*

¶18. Ordinarily, claims of ineffective assistance should be raised in a motion for post-conviction relief, not on direct appeal. As this Court has summarized:

> It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim. Because an appellate court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. We may address such claims on direct appeal only if the issues are based on facts fully apparent from the record. If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.

*Johnson v. State*, 191 So. 3d 732, 735-36 (¶13) (Miss. Ct. App. 2015), *cert. denied*, 202 So. 3d 209 (Miss. 2016), *cert. denied*, 137 S. Ct. 670 (2017) (citations, quotation marks, and alterations omitted).

¶19. Our Supreme Court has stated that, "[w]ith respect to the overall performance of the attorney, 'counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (quoting *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)). On the record before us, we do not know whether trial counsel had strategic reasons for not objecting to the State's questions to Hope or eliciting the same testimony from Pinter. As

10

noted above, we also do not know whether the State could have articulated a proper purpose for the questions if an objection had been made. Under these circumstances, consistent with our usual practice, we decline to address Pinter's ineffective assistance claim on direct appeal. *Cf. Webb v. State*, 113 So. 3d 592, 602 (¶41) (Miss. Ct. App. 2012) (declining to address a claim of ineffective assistance based on a failure to object to hearsay testimony because the reasons that counsel did not object were unclear from the record on direct appeal). We do so without prejudice to Pinter's right to raise the issue in a motion for post-conviction relief.[2]

## II.     Motion to Suppress

¶20.    Pinter next argues that the trial judge committed reversible error by denying his motion to suppress his confession to Chief Ogletree and the drugs found in the Sentra. Pinter argues that his confession should have been excluded because the State failed to prove that the confession was voluntary or obtained in compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). He alleges that the warrantless search of the Sentra violated the Fourth Amendment to the United States Constitution. We address these issues in turn.

### A.     *Miranda*

¶21.    "The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circumstances." *Houston v. State*, 170 So. 3d 542, 545 (¶12) (Miss. Ct. App. 2014) (citing *Gavin v. State*, 473 So. 2d 952, 954

---

[2] Pinter may not file such a motion in the circuit court until he first obtains permission from the Mississippi Supreme Court. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015).

(Miss. 1985)). "This Court will not reverse a trial court's finding that a confession was voluntary and admissible as long as the trial court applied the correct principles of law, and the finding is factually supported by the evidence." *Id.* (citing *Greenlee v. State*, 725 So. 2d 816, 825 (¶21) (Miss. 1998)). "Further, where there is conflicting evidence about a confession's admissibility, this Court 'will not disturb the trial court's finding unless it appears clearly contrary to the overwhelming weight of the evidence.'" *Id.* (quoting *Wiley v. State*, 465 So. 2d 318, 320 (Miss. 1985)).

¶22. As noted above, Chief Ogletree testified that he read Pinter his *Miranda* rights, and Pinter "stated that he did understand" those rights. Pinter denied that this occurred, but the trial judge obviously found Chief Ogletree's testimony more credible, and Pinter does not challenge that credibility determination in this appeal. Rather, Pinter argues that even if he "stated that he did understand" his rights, that did not amount to a valid waiver of those rights.

¶23. Pinter's argument is without merit. In *Houston*, *supra*, this Court held that the defendant's confession was admissible because he confessed after he was advised of his *Miranda* rights and stated "that he understood his rights," even though he then "refused to sign [a] *Miranda* waiver." *Houston*, 170 So. 3d at 544, 546 (¶¶5, 13-14). Likewise in this case, Chief Ogletree testified that Pinter voluntarily confessed after being advised of his rights and indicating that he understood those rights. Pinter's confession is not inadmissible simply because he did not expressly state orally or in writing that he "waived" his right to

12

counsel or his right to remain silent. *Odom v. State*, 769 So. 2d 189, 196 (¶20) (Miss. Ct. App. 2000) ("That Odom did not waive his rights in writing is of no consequence since the lack of a written waiver does not invalidate the waiver."). As the United States Supreme Court has explained:

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, *but is not inevitably . . . necessary . . . to establish waiver.* The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. . . . [M]ere silence is not enough. That does not mean that the defendant's silence, *coupled with an understanding of his rights and a course of conduct indicating waiver*, may never support a conclusion that a defendant has waived his rights. . . . [I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

*North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (emphasis added).

¶24. Consistent with *Butler* and *Houston*, the trial judge did not err in finding that Pinter's confession was voluntary and admissible. The confession immediately followed Pinter's express statement that he understood the *Miranda* rights that had just been read to him. This supports the conclusion that Pinter voluntarily waived his rights.

## B. Fourth Amendment

¶25. Pinter next argues that the trial judge committed reversible error by denying his motion to suppress the methamphetamine, marijuana, and Xanax found in the trunk of the Sentra. The State responds that the search of the car was a valid "inventory search."

¶26. "In reviewing the denial of a motion to suppress, we must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial

13

credible evidence." *Gore v. State*, 37 So. 3d 1178, 1188 (¶25) (Miss. 2010) (quoting *Moore v. State*, 933 So. 2d 910, 914 (¶9) (Miss. 2006)). "Where supported by substantial credible evidence, this Court shall not disturb those findings." *Moore*, 933 So. 2d at 914 (¶9). "Review of the record is not limited to evidence presented to the trial judge at the suppression hearing; this Court may look to the entire record to determine whether the trial judge's findings are supported by substantial evidence." *Galloway v. State*, 122 So. 3d 614, 669 (¶181) (Miss. 2013).

¶27.    "It is common practice for the police to conduct an inventory of the contents of vehicles they have taken into their custody or are about to impound." 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.4(a) (5th ed. 2010). "Inventory searches have two purposes: to protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions." *United States v. Ducker*, 491 F.2d 1190, 1192 (5th Cir. 1974) (quoted in LaFave, *supra*); *accord Black v. State*, 418 So. 2d 819, 821 (Miss. 1982). An inventory search may also serve to "protect[] the police from danger." *Green v. State*, 183 So. 3d 78, 82 (¶9) (Miss. Ct. App. 2015), *aff'd*, 183 So. 3d 28 (Miss. 2016) (quoting *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999)). Such a search is reasonable and consistent with the Fourth Amendment when "it is clear that the procedure used is a valid inventory and is not merely a pretext for a search, whether or not there is some suspicion that contraband or other evidence may be found." *Ducker*, 491 F.3d at1192. Our "Supreme Court [has] held that 'it is permissible for officers to conduct an inventory search

14

of a vehicle when the circumstances require it to be impounded.'" *Logan v. State*, 987 So. 2d 1027, 1031 (¶14) (Miss. Ct. App. 2008) (quoting *Black*, 418 So. 2d at 821) (brackets omitted). Our Supreme Court has also held that a valid inventory search may extend to the locked trunk of a car. *See Robinson v. State*, 418 So. 2d 749, 755-56 (Miss. 1982).

¶28. This Court has also recognized that police may conduct an inventory search "while the vehicle is still on the highway awaiting towing" and that the search "does not offend Fourth Amendment principles so long as [it] is made pursuant to standard police procedures and for the purpose of protecting the car and its contents." *O'Connell v. State*, 933 So. 2d 306, 309 (¶10) (Miss. Ct. App. 2005) (quoting *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995)) (quotation marks omitted). "If there is no showing [that the police acted in] bad faith or for the sole purpose of investigation, evidence discovered during an inventory search is admissible." *Id.* at (¶11) (quoting *United States v. Gallo*, 927 F.2d 815, 819 (5th Cir. 1991)). Moreover, "there is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient." *Id.* at (¶12) (citing *Como*, 53 F.3d at 92); *see also Florida v. Wells*, 495 U.S. 1, 4 (1990) (holding that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence" but may be carried out based on an "established routine" of the law enforcement agency).

¶29. On appeal, Pinter does not dispute that he was validly placed under arrest based on the outstanding warrant for his arrest. Nor does he dispute that the circumstances of his

15

arrest required that the car be towed, as there were no other adults in the car with Pinter.[3] Because the car was about to be towed, it was not unreasonable and did not violate the Fourth Amendment for Chief Ogletree to search the vehicle to determine whether it contained any valuable contents that needed to be safeguarded. *Logan*, 987 So. 2d at 1031 (¶14). Pinter's only argument on appeal is that the inventory search was not "conducted pursuant to standard, routine police procedures" and was a mere "pretext concealing an investigatory police motive." *Mitchell v. State*, 792 So. 2d 192, 206-07 (¶59) (Miss. 2001).

¶30. We conclude that the trial judge's finding that the search was a valid inventory search was supported by the evidence. Chief Ogletree testified that the search was an inventory search and that its purpose was to determine whether there was anything "valuable inside the vehicle." Chief Ogletree also testified that it was his normal practice to conduct an inventory search when he made an arrest in the course of a traffic stop. As noted above, the State is not required to introduce proof of written procedures; testimony regarding standard practices is sufficient. *O'Connell*, 933 So. 2d at 309 (¶12). Pinter argues that Chief Ogletree only testified as to *his* standard procedure and "did not testify that this was the Police Department's standardized procedure." However, this argument ignores that Chief Ogletree was the chief of police for the town of Sebastopol at the time of the arrest. There is nothing in the record to suggest that the standard practice of the Sebastopol Chief of Police was not the standard practice of the Sebastopol Police Department.

---

[3] Only Pinter's nephew, who was about ten years old, was with him. Chief Ogletree called another officer to come and get the child.

¶31.    "If there is no showing [that the police acted in] bad faith or for the sole purpose of investigation, evidence discovered during an inventory search is admissible." *Id.* at (¶11) (quoting *Gallo*, 927 F.2d at 819).  There was no such showing in this case. "[C]onsidering the totality of the circumstances," we conclude that the trial judge's findings "are supported by substantial credible evidence." *Gore*, 37 So. 3d at 1188 (¶25) (quoting *Moore*, 933 So. 2d at 914 (¶9)).

### III.    Weight and Sufficiency of the Evidence

¶32.    Pinter next argues that he is entitled to a judgment of acquittal or, alternatively, a new trial because the State presented insufficient evidence to sustain the conviction or, alternatively, the verdict is against the overwhelming weight of the evidence.  Specifically, Pinter argues that there was insufficient evidence of "incriminating circumstances" to establish that he had constructive possession of the illegal drugs, especially since he was not the owner of the Nissan Sentra.  The State responds that the evidence—including Pinter's own statement to Chief Ogletree and Hope's testimony that he worked in construction and owned a tool bag—was more than sufficient to uphold the verdict and conviction.[4]

¶33.    The applicable standards of review are well settled.  When the defendant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

---

[4] The State also argues that Pinter waived his weight-of-the-evidence argument because his new trial motion was untimely.  However, the State acknowledges that Pinter preserved his challenge to the sufficiency of the evidence.  We will consider both of these closely related issues, notwithstanding the possible procedural bar to one.

essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). The issue on appeal is not whether *we* would have found Pinter guilty based on the evidence presented at trial; rather, his conviction must be affirmed if there was enough evidence for "any rational trier of fact" to have rendered a guilty verdict. *Id.* "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 844 (¶18). The evidence must be "[v]iewed in the light most favorable to the verdict," and we will affirm unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial[.]" *Id.* at (¶19).

¶34.    Pinter argues that the State was required to present evidence of "incriminating circumstances" other than mere "physical proximity" in order to convict him on a theory of "constructive possession" of the drugs at issue. *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). He then argues that his statement to Chief Ogletree is not an "incriminating circumstance," reasoning that he only said that "he liked the way that [the drugs] made him feel" and did not admit to actual ownership or possession of the drugs.

¶35.    We disagree. Chief Ogletree testified that he asked Pinter only one question, which was "why *he* [(Pinter)] had . . . multiple types of drugs together" (emphasis added). A rational trier of fact certainly could have interpreted Pinter's response to the question as a confession that the drugs belonged to him. In addition, Chief Ogletree testified that the drugs

18

were found at the top of an open bag of tools in the trunk of the car, and Hope testified that Pinter worked in construction and owned a large tool bag. Thus, the State presented evidence that a crime was committed and that Pinter effectively confessed to it. This is sufficient evidence to sustain the verdict. *See, e.g.*, *Cotton v. State*, 675 So. 2d 308, 313 (Miss. 1996) (explaining that a confession corroborated by "independent proof" of the "body or substance of the crime" is sufficient to prove guilt beyond a reasonable doubt). For the same reasons, the verdict was not against the overwhelming weight of the evidence, and the trial judge did not sanction an injustice or abuse his discretion by denying Pinter's motion for a new trial.

### IV. Sentence as a Habitual Offender

#### A. Habitual Offender Status

¶36. Pinter next argues that the trial court erred by sentencing him as a habitual offender because the State failed to introduce competent evidence to prove his habitual offender status. Specifically, Pinter argues that although the transcript of the sentencing hearing reflects that the State offered certified judgments of several felony convictions and sentences, the documents were not formally admitted into evidence and therefore cannot support his sentence as a habitual offender under section 99-19-81. Although Pinter did not raise this issue in the trial court, he argues that the claim is not procedurally barred because the trial court committed "plain error" and imposed an illegal sentence.

¶37. Pinter relies primarily on *Grayer v. State*, 120 So. 3d 964, 969 (¶¶16-19) (Miss.

19

2013). In *Grayer*, the Court held that "[t]o sentence a defendant as a habitual offender, all that is required is that the accused be properly indicted as [a] habitual offender, that the prosecution prove the prior offenses by competent evidence, and that the defendant be given a reasonable opportunity to challenge the prosecutor's proof." *Id.* at (¶18) (quotation marks and brackets omitted). At Grayer's sentencing hearing, "the State informed the circuit court that it had certified copies of Grayer's prior convictions and had provided copies to Grayer and his counsel," but the State "failed to place the certified copies into the record or to offer any evidence to support Grayer's habitual-offender status, other than a recitation of his prior felony convictions." *Id.* at (¶19). The Supreme Court held that "the State failed to prove Grayer's prior convictions by competent evidence" and, therefore, the circuit court committed "plain error" by sentencing Grayer as a habitual offender. *Id.*; *accord Hull v. State*, 174 So. 3d 887, 900-02 (¶¶41-48) (Miss. Ct. App. 2015).

¶38.     However, in *Carr v. State*, 178 So. 3d 344 (Miss. Ct. App. 2014), *aff'd*, 178 So. 3d 320 (Miss. 2015),[5] this Court held that the trial judge did not commit plain error by sentencing Carr as a habitual offender because "the State moved for . . . copies of [Carr's prior] convictions to be admitted," and "Carr did not object." *Carr*, 178 So. 3d at 348 (¶11). Although "the trial court never formally admitted the convictions into the record," this Court held that Carr's sentence as a habitual offender did not rise to the level of "plain error"

---

[5] On writ of certiorari, the Supreme Court "limit[ed] the question on review to whether [its] decision in [*Gowdy v. State*, 56 So. 3d 540 (Miss. 2010)] applies retroactively." *Carr*, 178 So. 3d at 321 (¶6) (citing M.R.A.P. 17(h)).

because the error—the failure to formally admit the documents into evidence—did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Weems v. State*, 63 So. 3d 579, 584 (¶32) (Miss. Ct. App. 2010)). In so holding, we emphasized that "Carr [did] not take issue with the admissibility or validity of the convictions, only that the proper procedure was not followed." *Id.* at 348-49 (¶12).

¶39.    At Pinter's sentencing hearing, counsel for the State first stated that he had in his possession and "would submit for the Court's consideration" "a certified, self-authenticating copy of the judgment" of conviction for two felonies (grand larceny and burglary of a dwelling). Counsel recited the cause numbers, dates, and sentences associated with those convictions. Pinter's attorney confirmed to the court that he had a copy of the judgment and that he "accept[ed] this as a certified copy." The State then stated that it had and "would submit" a "certified . . . , self-authenticating" copy of a judgment showing three additional felony convictions (aggravated assault, grand larceny, and escape from jail). Again, the State provided cause numbers, dates, and sentences for each conviction. Defense counsel confirmed that he had been provided and had reviewed copies of this judgment as well. The Court then asked, "So no objection to its admission?" And defense counsel confirmed: "No objection." Finally, the State offered that it "would submit" a "certified" and "self-authenticating" copy of a judgment showing two additional convictions for residential burglaries. The State again recited cause numbers, dates, and sentences imposed. The trial judge then asked defense counsel, "No objection?" And defense counsel confirmed, "No

21

objection." The court then sentenced Pinter as a habitual offender, again without objection by Pinter.

¶40.    The State argues that on the specific facts of this case, *Grayer* is distinguishable, *Carr* is controlling, and Pinter's sentence is not plain error. We agree. In *Grayer*, counsel for the State recited Grayer's prior convictions and stated that he had copies but "failed to place the certified copies into the record *or to offer* any evidence to support Grayer's habitual-offender status." *Grayer*, 120 So. 3d at 969 (¶19) (emphasis added); *see also Hull*, 174 So. 3d at 901-02 (¶47) (distinguishing *Carr* on the ground that "the State made no . . . motion" to admit certified copies of Hull's convictions). In contrast, similar to *Carr*, the transcript of Pinter's sentencing hearing shows that the State intended to offer as evidence certified copies of judgments showing seven prior felony convictions. In addition, Pinter's attorney specifically confirmed that he had been provided with and had reviewed the convictions *and did not object to their admission*. As in *Carr*, the fact that the "the trial court never formally admitted the convictions into the record" was an oversight, *Carr*, 178 So. 3d at 348 (¶11), but it was not a "manifest miscarriage of justice." *Walters v. State*, 206 So. 3d 524, 530 (¶16) (Miss. 2016) (holding that a court will reverse based on "plain error" only if the "error . . . resulted in a manifest miscarriage of justice"). Had Pinter raised this issue in the trial court, the issue could have been addressed quickly and easily, and Pinter would have no argument on appeal. As in *Carr*, under these circumstances, we conclude that the oversight and Pinter's sentence as a habitual offender do not "seriously affect[] the fairness, integrity

22

or public reputation of [the] judicial proceedings." *Carr*, 178 So. 3d at 348 (¶11) (quoting *Weems*, 63 So. 3d at 584 (¶13)).

### B.     Habitual Offender Sentence on Count III

¶41.     As a final alternative argument, Pinter contends that the trial court committed plain error by sentencing him as a habitual offender on Count III, possession of alprazolam, because that offense was only a misdemeanor. *See* Miss. Code Ann. § 41-29-139(c)(3)(A) (providing that simple possession of less than 100 dosage units of a Schedule III, IV, or V controlled substance "is a misdemeanor and publishable by [confinement of] not more than one . . . year"). The habitual offender statute provides:

> Every person convicted in this state *of a felony* who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed *for such felony*, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (emphasis added).

¶42.     Based on the plain language of the statute, the State concedes that the trial court erred by sentencing Pinter as a habitual offender on Count III, a misdemeanor offense. We accept the State's confession of error, vacate Pinter's sentence on Count III only, and remand for the circuit court to sentence him on Count III as a non-habitual offender.

### CONCLUSION

¶43.     In summary, we hold that the admission of testimony regarding Pinter's prior drug use

23

was not plain error, that the trial judge did not err by denying Pinter's motion to suppress the drugs at issue or Pinter's statement to Chief Ogletree, that there was sufficient evidence to support the conviction, that the jury's verdict was not against the weight of the evidence, and that Pinter's sentence as a habitual offender on Count I was not plain error or a manifest miscarriage of justice. Therefore, we affirm Pinter's convictions and the sentences imposed on Count I and Count II. However, Pinter should not have been sentenced as a habitual offender on Count III, a misdemeanor offense. Therefore, we vacate that sentence and remand for resentencing on Count III only. We also decline to address Pinter's claim of ineffective assistance of counsel; we do so without prejudice to his right to raise such a claim in a properly filed motion for post-conviction relief.

¶44. **THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND VACATED AND REMANDED IN PART. THE CONVICTIONS OF COUNT I, POSSESSION OF AT LEAST ONE-TENTH BUT LESS THAN TWO GRAMS OF METHAMPHETAMINE, COUNT II, POSSESSION OF LESS THAN THIRTY GRAMS OF MARIJUANA, AND COUNT III, POSSESSION OF LESS THAN 100 DOSAGE UNITS OF ALPRAZOLAM, ARE AFFIRMED, AND THE SENTENCES FOR COUNTS I AND II OF THREE YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR REDUCTION OF SENTENCE, AND TO PAY FINES OF $2,000 AND $250, ARE AFFIRMED. THE SENTENCE FOR COUNT III IS VACATED, AND THIS CASE IS REMANDED FOR RESENTENCING ON COUNT III ONLY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**